IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL RAFFAELE | : | CIVIL ACTION |
| | : | NO. 09-3622 |
| v. | : | |
| | : | |
| JOHN E. POTTER | : | |

O'NEILL, J.                                                                                    January 5, 2012

## MEMORANDUM

Plaintiff Michael Raffaele, a United States Postal Service employee, filed a complaint against defendant Postmaster General John E. Potter alleging age and sex discrimination as well as retaliation. Defendant now moves for summary judgment in his favor. For the reasons that follow, I will grant defendant's motion.

## BACKGROUND

During the period of the alleged discrimination, plaintiff worked as Postmaster of the Warminster Post Office in Warminster, Pennsylvania. Compl. at 3. Plaintiff has worked for the United States Postal Service since 1979 and has held his current position since October, 2008. Raffaele Dep. at 9, 13. Prior to his promotion to Postmaster, plaintiff worked as Officer in Charge of the Warminster Post Office.[1] Id. at 13. In both capacities plaintiff oversaw the entire operation of the Warminster office and reported directly to the Post Office Operations Manager (POOM) for Group 3, which was part of the Philadelphia District. Id. at 16-17.

During the period from October 12, 2007, through March 3, 2008, plaintiff submitted

---

[1] The distinction between plaintiff's positions as Postmaster and OIC is purely administrative. When an office does not have a Postmaster, whether it be due to vacancy of the position, illness, retirement, or otherwise, the OIC serves the same duties as the Postmaster would. The position is temporary, but often results in being named Postmaster. Def.'s Mot. (Dkt. No. 25) at 4, n.3; Raffaele Dep. at 12-14.

twelve hiring requests to fill vacancies within his office.[2]  Id. at 95.  These requests were properly prepared and received by the District's Human Resources Management Board.  Compl. at 4.  Despite the number of requests, the Board only addressed plaintiff's requests once, at which time it approved all six requests under consideration.  Def.'s Mot. (Dkt. No. 25), Ex. 3, Mins. of Feb. 6, 2008 Bd. Meeting.  During this same period of time, the Board also discussed and approved some of the requests by Lisa Layman, Postmaster of the Norristown, Pennsylvania office, who is younger and female.  Def.'s Mot. (Dkt. No. 25), Ex. 3, Mins. of Jan. 2, 2008 Bd. Meeting.

According to plaintiff, the Board's prolonged delay in approving his hiring requests caused a staff shortage in his office that affected the terms and conditions of his employment.  Compl. at 5.  Plaintiff lists the ways that his job was affected through the staff shortages caused by the Board's delay in approving his staffing requests:  (1) plaintiff had to waste time re-submitting hiring requests that had been ignored by the Board; (2) plaintiff had to operate with insufficient staff for more than one year; (3) plaintiff had to spend extra time managing his office because of the shortage in staff; (4) plaintiff had to address employee complaints related to the under-staffing; (5) plaintiff had to deal with employees' anger and frustration stemming from the under-staffing; (6) plaintiff had to struggle with an unproductive office; (7) the performance of the office suffered and affected plaintiff's merit pay; (8) stress in the office led to one of the workers committing suicide; and (9) plaintiff had to force employees to work overtime against their requests.  Pl.'s Mem. at 20-21.

---

[2]   The parties disagree as to the number of hiring requests submitted.  Defendant contends that only eight were submitted.  Def.'s Mot. (Dkt. No. 25) at 6.  The difference is likely due to methods of calculating hiring requests for several positions at the same time or repeated requests to fill the same positions.  Regardless, the difference is inconsequential.

In addition to these negative effects on the working conditions at the office, plaintiff also claims that he received lower performance ratings resulting from defendant's discriminatory actions. Compl. at 6. In his own declaration, plaintiff notes that his performance appraisal rating in 2007 found him to be "Non Contributing" in the categories of "Total Operating Expenses," "Carriers out after 1700," "Motor Vehicle Accidents," and "Delivery Confirmation Scanning." Pl.'s Mem., Ex. I. (Plaintiff's declaration does not attach a copy of his 2007 performance appraisal rating). According to plaintiff, these negative ratings were the direct result of defendant's failure to approve his hiring requests. Id.

Further, in his complaint, plaintiff claimed that the negative performance of his post office resulted in his merit and retirement pay being reduced. Compl. at 6. However, in his motion for summary judgment, defendant refutes this claim by showing that plaintiff was given 5.73% and 4% raises in total compensation in fiscal years 2007 and 2008, respectively. Def.'s Mot. (Dkt. No. 25) at 15, citing Raffaele Dep. at 190-91. At his deposition, plaintiff admitted that in his over thirty years of employment at the USPS, he does not remember any other year in which he received a raise greater than 5%. Id.

On November 27, 2007, plaintiff filed a complaint with the USPS Equal Employment Opportunity Office. Compl. at 6. While the complaint was pending, Lisa Jordan, a human resources manager, and Lisa Layman had a conversation regarding plaintiff's EEO complaint during which Jordan told Layman that plaintiff "did not know who he was dealing with." Layman Dep. at 12-13. In response to this conversation, plaintiff added a claim of reprisal to his EEO complaint. Compl. at 6.

**STANDARD OF REVIEW**

The party moving for summary judgment has the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it might affect the outcome of the case under governing law. Id. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477

U.S. at 322.

## DISCUSSION

I.  Discrimination Claims Under ADEA and Title VII

The Age Discrimination in Employment Act makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). Title VII of the Civil Rights Act of 1964 makes the same actions unlawful when done "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When considering age discrimination claims under the ADEA or sex discrimination claims under Title VII, courts apply the three-step, burden shifting analysis set forth in McDonnell Douglas Corporation v. Green. 411 U.S. 792, 802 (1973). See, e.g., Pivirotto v. Innovative Sys., Inc., 191 F.3d 344 (3d Cir. 1999) (applying test to sex discrimination case); Simpson v. Kay Jewelers, 142 F.3d 639 (3d Cir. 1998) (applying test to age discrimination case).

Plaintiff first bears the burden of making a prima facie case of discrimination. Because plaintiff claims that he was subjected to an adverse employment action, he is required to show that (1) he was a member of a protected class, (2) he was subject to an adverse employment action, and (3) similarly situated members of other classes were treated more favorably. See Tucker v. Merck & Co., Inc., 131 Fed. App'x. 852, 854 (3d Cir. 2005) (setting forth elements of prima facie case when alleged discrimination is an adverse employment action).

Where the plaintiff can establish a prima facie case, he raises a rebuttable presumption of discrimination and the burden shifts to the defendant to offer a legitimate, nondiscriminatory

reason for the adverse employment action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 596 (1993). If the defendant is able to offer a legitimate reason for the decision, the burden shifts back to the plaintiff, who must provide "some evidence from which a factfinder could reasonably conclude that the defendant's proffered reasons were fabricated." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). To survive a motion for summary judgment, the plaintiff can "prevail by either (I) discrediting the [employer's] proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Torre v. Casio, Inc., 42 F.3d 825, 829-30 (3d Cir. 1994) (emphasis in original), citing Fuentes, 32 F.3d at 764.

Plaintiff has shown that he is a member of two protected classes, he is both over forty and a male. For the reasons set forth below I find that he has not met his burden to establish the remaining elements of his prima facie case.

A.   Plaintiff Did Not Suffer an Adverse Employment Action

The Court of Appeals has defined an "adverse employment action" as "an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004), quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001); see also Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (defining adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits"). Plaintiff was not discharged or demoted, nor did he suffer a decrease in pay. On the contrary, plaintiff was given 5.73% and 4% raises in total compensation in fiscal years 2007 and 2008, respectively. In his

deposition, plaintiff conceded that he received his largest ever annual increase in total compensation during one of the same years that he claims that he was discriminated against. Raffaele Dep. at 193. Plaintiff argues that I should apply a more lenient standard that would allow a finding of an adverse employment action "if the employer's actions affect the terms and conditions of [the plaintiff's] employment." Pl.'s Mem. at 18-19.

a.  Changes to Terms and Conditions

Plaintiff asserts that an employee can be subject to an adverse employment action even if not subject to one of the "traditional" actions (i.e. firing, failing to hire, failing to promote, reassignment, or a significant change in benefits), so long as the employer's actions affect the terms of conditions of his employment. However, this Court has previously held that a plaintiff only sustains an adverse employment action if he or she endures a *materially* adverse change in the terms and conditions of employment. Glanzman v. Metro. Mgmt. Corp., 290 F. Supp. 2d 571, 582 (E.D. Pa. 2003), citing Galabaya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). To be materially adverse, "a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. This Court has held that a change is materially adverse when it rises to the level of "a termination of employment, a demotion evidence[d] by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities or other indices unique to a particular situation." Id. Plaintiff has not shown that he endured a materially adverse change to the terms and conditions of his employment.

It is clear that plaintiff's job was made more difficult by the staff shortages; however, none of the changes that plaintiff lists amount to anything more than would be expected from an

experienced manager during difficult financial times.[3]  Further, plaintiff cites no supporting case law in which the Court of Appeals, or any Court, has found an adverse employment action in similar circumstances.

b.  <u>Negative Performance Evaluations</u>

Plaintiff also argues that he received lower performance ratings because of defendant's alleged discrimination, and that these lower performance ratings constitute adverse employment actions.  The Court of Appeals has previously held that when a negative performance evaluation is accompanied by an increase in pay, the evaluation is not, by itself, an adverse employment action.  <u>Tucker</u>, 131 Fed. App'x at 857 (affirming district court's finding of no adverse action when plaintiff presented no evidence that negative evaluations impacted plaintiff's compensation); <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 431 (3d Cir. 2001) (failing to find adverse employment action, despite negative evaluations, because plaintiff "was not demoted in title, did not have his work schedule changed, was not reassigned to a different position or location . . . , did not have his hours or work changed or altered in any way, and . . . was not denied any pay raise or promotion as a result of these reprimands").  Even a negative evaluation that results in a less than expected wage increase is not per se an adverse employment action.  <u>Equal Emp't Opportunity Comm'n v. Wyeth Pharm.</u>, No. 03-02967, 2004 WL 503417, at *2 n.3 (E.D. Pa. March 11, 2004).  Therefore, because of the clear precedent within this circuit, plaintiff's negative performance evaluations are not adverse employment actions.

---

[3]  In fiscal years 2007 and 2008, the USPS lost $5.1 billion and $2.1 billion, respectively.  <u>See</u> Def.'s Mot. (Dkt. No. 25) at 6, n.7, <u>citing</u> USPS Annual Report, 2007, available at http://www.usps.com/financials/_pdf/AR2007_final.pdf. at 5; USPS Annual Report 2008, available at http://www.usps.com/financials/_pdf/annual_repory-2008.pdf, at 5.

    c.    Hostile Work Environment

Plaintiff raises his claim for hostile work environment for the first time in his response to defendant's motion for summary judgment. Pl.'s Mem. at 19. In a similar case, the Court of Appeals recently explained that a plaintiff's claim for disparate treatment in the employment context "does not encompass [the] separate claim of hostile work environment." Green v. Postmaster Gen. of the U.S., No. 10-3245, 2011 WL 2781870, at *3 (3d Cir. Jul. 18, 2011), citing Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 838-39 (8th Cir. 2002). The two claims cannot be combined because a claim for hostile work environment is based on the "pervasiveness" of the employer's discriminatory conduct and is fundamentally different from a claim for disparate treatment, which focuses on discrete events. See Harley v. U.S. Sec'y of Treasury, No. 10-4501, slip. op. at 1 (3d Cir. Sept. 15, 2011) (explaining that claims for disparate treatment and hostile work environment are separate claims, each with specific requirements); Reynolds v. Dep't of the Navy, No. 10-3600, slip. op. at 3 (3d Cir. Jul. 22, 2011) ("[A] hostile work environment claim requires discrimination that is 'severe and pervasive.'"); Dorsey, 278 F.3d at 839 (finding that age discrimination claim was not broad enough to encompass hostile work environment claim). To properly set forth a claim for hostile work environment, plaintiff would have to "show that (1) [he] suffered intentional discrimination because of his [presence in a protected class], (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same [protected class] in that position, and (5) the existence of respondeat superior liability." Hightower v. Easton Area Sch. Dist., No. 09-5730, 2011 WL 4528371, at *12 (E.D. Pa. Sept. 30, 2011).

Because of the differences between the two standards, when the plaintiff in <u>Green</u> failed to raise her hostile work environment claim in the EEO process, the Court held that she failed to put either the EEO or the defendant on notice of her claim and thus failed to exhaust her administrative remedies.  <u>Green,</u> 2011 WL 278170, at *3.  The facts in this case are analogous to <u>Green</u>.  Because plaintiff did not cast his claim as a hostile work environment claim until his response to a motion for summary judgment, I cannot consider his hostile work environment claim.[4]  <u>Antol v. Perry</u>, 82 F.3d 1291, 1296 (3d Cir. 1996) ("The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court.").  However, even if plaintiff had raised the issue properly, there is insufficient evidence of pervasive discriminatory conduct to support a claim for hostile work environment.

Thus, because none of the effects that the staff shortages caused to plaintiff's working conditions, merit pay, or performance evaluations are sufficient to establish an adverse employment action, and because his hostile work environment claim cannot be considered, plaintiff has failed to satisfy the second prong of the prima facie case elements.

B.    <u>Plaintiff Did Not Show that Similarly Situated Employees of Other Classes Were Treated More Favorably</u>

Plaintiff spends considerable time establishing the fact that other post offices' hiring

---

[4]    Aside from the unfulfilled procedural requirements, plaintiff does not articulate a legal standard, cite any supporting case law, nor attempt to explain how the employer's conduct constituted a hostile work environment.  Instead, plaintiff merely states that, "[i]n fact, [p]laintiff submits that he was working in a hostile work environment."  Pl.'s Mem. at 19.

requests were treated differently by the Board. According to plaintiff, not only were other offices' staffing needs discussed and addressed more frequently by the Board, but those offices were often either fully staffed or staffed beyond their full complement. Pl.'s Mem. at 22-23. The facts set forth by plaintiff merely illustrate possible unfairness in the Board's decisions; but plaintiff's burden is to show that similarly situated members *of other classes* were treated more favorably. He has not met this burden.[5]

Plaintiff summarily lists seven postmasters who were "treated better" than he. Pl.'s Mem. at 27 ("Specifically, the Postmasters of Drexel Hill, Pottstown, Fort Washington, Glenside, Jenkintown, Conshohocken, and Downingtown were treated better than Plaintiff."). He implies that these postmasters were among those whose hiring requests were treated more favorably, but he provides no proof to support his allegations. Moreover, even if plaintiff's allegations were sufficient to prove that these postmasters were treated more favorably, he gives absolutely no indication as to their age or gender. Plaintiff's unsupported opinion that other postmasters of unknown ages and genders were treated more favorably than he is not sufficient to survive summary judgment. See Sarullo v. U.S. Postal Serv., 352 F.3d 789 (3d Cir. 2003) (affirming summary judgment when plaintiff failed to show causal nexus between protected class and adverse employment action); Dill v. Runyon, No. 96-3584, 1997 WL 164275, at *4 nn.8-9 (E.D. Pa. Apr. 3, 1997) (finding no prima facie case of discrimination, in part because plaintiff "provided no proof, or even an unsupported statement" of the ages of allegedly similarly situated

---

[5] Plaintiff's argument suggests that all other offices were staffed better than his. This, in itself, discredits his claim for disparate treatment based on race or gender. Defendant points out that plaintiff is not the only male postmaster, nor the only postmaster over forty years old, which would make it extremely unlikely that other members of plaintiff's protected classes were not among those that he alleges to have been treated more favorably.

persons).

The only specific comparison that plaintiff makes in his filings to another postmaster in terms of age or gender is to Lisa Layman, who is both younger and female. It is well established, however, that a plaintiff cannot selectively pick out one comparator when others are available. Simpson, 142 F.3d at 645 (holding that "plaintiff cannot pick out one comparator who was [treated more favorably] amid a sea of persons treated the same") (internal quotations omitted); Waldron v. SL Indus., Inc., 56 F.3d 491, 496-97 (3d Cir. 1995) (requiring more evidence than better treatment of a single similarly situated employee).[6]

Throughout his argument, plaintiff compares himself to Layman, both directly and indirectly through comparisons to the Norristown Post Office. Even if Layman were the only comparator, plaintiff has not shown that Layman was treated more favorably than he. Within the time period at issue, October 12, 2007 to March 3, 2008, Layman's office was granted eight out of eight hiring requests. Def.'s Mot. (Dkt. No. 25), Ex. 3, Mins. of Jan. 8, 2008 Bd. Meeting. During that same period, plaintiff's office was granted six out of six hiring requests. Def.'s Mot. (Dkt. No. 25), Ex. 3, Mins. of Feb. 6, 2008 Bd. Meeting. The Board granted both Warminster and Norristown's requests in full, so plaintiff's argument that Layman received more favorable

---

[6] Plaintiff appears to have contemplated other comparators, at least in terms of age. At plaintiff's deposition, he discussed three younger, male postmasters that he considered to have been treated more favorably than he: Faust Capobianco of Warrington; Mario DiPatrizio of Paoli; and the postmaster from Willow Grove, whom plaintiff could not identify by name. Raffaele Dep. at 213. Plaintiff did not mention these individuals in his response to defendant's motion for summary judgment. Even if he had, plaintiff's hiring requests were eventually granted in full. In contrast, Capobianco did not submit any hiring requests, so he did not receive favorable treatment, DiPatrizio only had two and a half requests granted out of three and a half submitted, and the unnamed postmaster only had two out of three requests granted. Def.'s Mot. (Dkt. No. 25), Ex. 3, Mins. 2008 Bd. Meetings.

treatment fails.

Plaintiff also argues that while his post office only had its hiring requests "considered" one time during the period in question, other post offices's requests were considered and discussed by the Board more frequently. Pl.'s Mem. at 19-20. A review of the Board's minutes, however, shows otherwise. From October 12, 2007, to March 3, 2007, a total of thirty-nine offices' hiring requests were considered by the Board. Def.'s Mot. (Dkt. No. 25), Ex. 3, Mins. of Bd. Meetings. Out of those thirty-nine, plaintiff's office was among thirty offices that were only considered once.[7] Id. Further, plaintiff alleges that Layman's Norristown office had its hiring requests considered twice, but both the minutes of the Board meetings and the list contained in plaintiff's response show that Norristown was only considered once during the period in question.[8] See Pl.'s Mem. at 23-24 (showing January 2, 2008, as the only Board meeting during the time period at which Norristown's hiring requests were discussed). Plaintiff has failed to show that Layman was treated more favorably than he. Once their respective requests were considered, both offices had their requests granted in full. Layman's office and plaintiff's office

---

[7] The statistics in plaintiff's memorandum are incomplete. Plaintiff attempts to show that his hiring requests were treated differently by showing that they were only considered once by the Board, despite multiple submissions. To do this, he asserts that other offices' requests were considered more frequently, but gives no indication of how many times those offices submitted requests. Indeed, plaintiff's requests were only considered once despite multiple submissions, but there are twenty-nine other offices whose requests were also only considered once and plaintiff leaves this Court with no idea how many requests any of those offices submitted. Pl.'s Mem. at 24-27.

[8] Both plaintiff and defendant state in their respective filings that Norristown's requests were considered twice. Both parties, however, take into consideration the minutes from the Board's meeting on March 5, 2008, which is after March 2, 2008, the outer limit of the dates at issue. However, even if the March 5th minutes were included, Norristown would have been among at least ten other offices that had their hiring requests considered on multiple occasions, and plaintiff makes no comparison to those other post offices. Def.'s Mot. (Dkt. No. 25), Ex. 3.

were among thirty other offices whose requests were considered only once by the Board during the relevant time period.   Def.'s Mot. (Dkt. No. 25), Ex. 3, Mins. of Bd. Meetings

c.   <u>Plaintiff has not Established a Prima Facie Case of Discrimination</u>

For the reasons listed above, I will grant defendant's motion for summary judgment with respect to both plaintiff's age discrimination and sex discrimination claims.  Plaintiff has not established that he was subject to an adverse employment action.  Further, plaintiff failed to produce any evidence of other postmasters being treated more favorably.  To the extent that plaintiff was forced to work with an understaffed office, it may have been unfair and was likely difficult but, unfortunately for plaintiff, difficulty and unfairness alone are not enough to show discrimination.

II.  <u>Retaliation Claim Under Title VII</u>

Plaintiff's claim for retaliation arises out of a statement by Lisa Jordan, the manager of human resources for the Philadelphia District.  In a conversation with Lisa Layman regarding plaintiff's pending EEO action, Jordan said that plaintiff "did not know who he was dealing with." Layman Dep. at 12-13.  After plaintiff learned of this statement, he amended his complaint to include a claim for retaliation.  Pl.'s Mem. at 8.  Plaintiff alleges that this statement by Jordan was an adverse action either (1) because he "took it as a threat" and it therefore affected the terms and conditions of his employment or (2) because it falls under the category of conduct that would dissuade a reasonable employee from engaging in protected activity.  Pl.'s Mem. at 31, 36.

Title VII "prohibits an employer from 'discriminat[ing] against' an employee or job

applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56 (2006), quoting 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show (1) that he engaged in a protected activity, (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity, and (3) a causal connection between the employee's protected activity and the employer's adverse action. Karakozova v. Trs. of Univ. of Pa., No. 09-02564, slip. op. at 8 (E.D. Pa. May 9, 2011), citing Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002).

In regard to the first element, activity that is protected by Title VII is interpreted broadly to include both formal procedures before a court or EEO commission and less formal opposition to perceived discrimination. Wilson v. Vilsack, No. 09-00787, slip. op. at 8 (E.D. Pa. Jul. 14, 2010), citing Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006). The discrimination opposed by the employee does not need to rise to the level of actual discrimination, but "the employee must hold an objectively reasonable belief, in good faith, that the activity [he] oppose[s] is unlawful." Moore, 461 F.3d at 341.

With respect to the second element, "a plaintiff claiming retaliation . . . must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[9] Id. at 341, quoting Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68.

---

[9] The test previously applied by the Court of Appeals was satisfied only when plaintiff could show that the adverse action was either a discharge, a refusal to hire, or another

The third element of the prima facie case requires the plaintiff to show a causal connection between the previous two elements.  Id.  The plaintiff must show that his "opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination" were connected.  Id.

A.  Plaintiff Failed to Show a Materially Adverse Action

The standard for establishing a materially adverse action for claims of retaliation differs from the standard for establishing an adverse employment action that constitutes an act of discrimination under the ADEA or Title VII.  Unlike discrimination claims, the adverse action required for a retaliation claim need not materially affect the terms and conditions of employment.  See Moore, 461 F.3d at 341 ("[T]he discrimination and retaliation provisions of Title VII have different statutory language and different purposes, and . . . 'the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'"), quoting Burlington N. & Santa Fe Ry. Co., 548 U.S. at 62.  Instead, as both parties agree, plaintiff is required to show the adverse action would have dissuaded a reasonable employee from making or supporting a charge of discrimination.

This is consistent with the Supreme Court's holding in Burlington Northern.  There, the Court explained that it is essential for the adverse action to rise to the level of materiality because

---

action that "alter[ed] the employee's 'compensation, terms, conditions, or privileges of employment,' deprive[d] him or her of 'employment opportunities,' or 'adversely affect[ed] his [or her] status as an employee." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997), quoting Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996), overruled by Burlington N. & Santa Fe Ry. Co., 548 U.S. at 61.

"it is important to separate significant from trivial harms." Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68. The Court also made clear that this standard is an objective one, judged from the viewpoint of a reasonable employee and not based on the subjective feelings of the individual alleging retaliation. Id.

Plaintiff's first argument fails as a matter of law. Whether he considered Jordan's statement a threat is irrelevant because the Court's evaluation of whether an action was adverse does not consider the subjective feelings of the employee alleging retaliation. See Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68. Instead, I must consider whether Jordan's comment would have dissuaded a reasonable employee from engaging in protected activity. Plaintiff cites no authority to show that Jordan's statement rises to this level, and instead rests his argument on his personal opinion, the opinion of Lisa Layman that the statement "could be" a threat, and the statement of another postmaster that the statement was "inappropriate." Pl.'s Mem. at 36, citing Ex. I at 12-16 and Ex. C. at 18-19.

In determining whether a reasonable employee would be dissuaded from engaging in protected activity, the Court cannot view Jordan's comments in a vacuum. See Burlington N. & Santa Fe Ry. Co., 548 U.S. at 69. ("[T]he significance of any given act of retaliation will often depend on the particular circumstances."). In light of the circumstances, plaintiff argues that because Jordan held a powerful position within the USPS, the effect of her comments should be given more weight. Pl.'s Mem. at 36. Defendant points out, however, that Jordan never used her superiority in any way against the plaintiff beyond making the comment at issue. In contrast, the Board, of which Jordan was a co-chair, actually approved plaintiff's hiring requests shortly after he filed his EEO action. Def.'s Mot. (Dkt. No. 25) at 23. At his deposition, plaintiff testified

that he believes that the Board approved his hiring requests in response to his EEO action. Raffaele Dep. at 96. Plaintiff does not have a cause of action for receiving better treatment as a result of his protected activity.

Further, plaintiff cites no case law supporting his argument that Jordan's single statement unaccompanied by any negative action is sufficient to establish an adverse action. Instead, plaintiff cites to the EEO compliance manual, which includes several citations to cases that discuss adverse actions generally, but none that are binding on this court nor relevant to the specific facts of this case. Pl.'s Mem. at 30-37.

Words alone, even when harsh, do not constitute an adverse action if they are unaccompanied by follow up discipline or other negative action. See Sconfienza v. Verizon Pa. Inc., 307 Fed. App'x 619, 622, 624 (3d Cir. 2008) (finding that "harsh words that lack real consequences are not" sufficiently concrete to show an adverse action); St. John v. Potter, No. 09-4196, 2011 WL 780685, slip. op. at *8 (E.D. Pa. March 4, 2011) (concluding that temporary suspension was not adverse action because "failure to show harm, such as 'resultant economic loss . . . or any change to the terms of plaintiff's employment' can be fatal to one's claim"), quoting Morrison v. Carpenter Tech. Corp., 193 Fed. App'x 148, 154 (3d Cir. 2006); Nagle v. RMA, The Risk Mgmt. Ass'n, 513 F. Supp. 2d 383, 386, 391 (E.D. Pa. 2007) (holding that plaintiff's "heated" sixty-five minute meeting with a supervisor and a human resources officer that left her believing that her career was over and suffering from emotional distress was not sufficient to show adverse action); Yeager v. UPMC Horizon, 698 F. Supp. 2d 523, 545 (W.D. Pa. 2010) (establishing that threats from supervisor, standing alone, were not enough to establish adverse action when the supervisor did not have unilateral power to terminate employment);

Nolan v. Swartz Campbell, LLC, No. 2:05-1508, 2008 WL 598291, at *20 (W.D. Pa. Feb. 29, 2008) (explaining that harsh communication, on its own, did not constitute an adverse action for purposes of a retaliation claim because "no materially adverse action was attached to or has been connected with that communication, and merely experiencing some apprehension and subjectively feeling intimidated from such a conversation hardly amounts to the type [of] measures that the courts have found sufficient to support a claim of retaliation"); Pugni v. Reader's Digest Assoc., 2007 WL 1087183, at *23 (S.D.N.Y. Apr. 9, 2007) (explaining that supervisor's alleged threat that the plaintiff's days at the company "were numbered" was not an adverse action because it was never carried out).  But see Moore, 461 F.3d at 346 (finding that employer's threat to make employee's life into a "living nightmare" was adverse action when it was accompanied by imposition of discipline); Boandl v. Geithner, 752 F. Supp. 2d 540, 565 (E.D. Pa. 2010) (agreeing with plaintiff that a negative performance evaluation combined with a subsequent 120-day trial period to either improve or be fired was adverse action).

B.  Conclusion

Because no reasonable factfinder could conclude that plaintiff suffered from an adverse action in retaliation for his protected activity, I will grant defendant's motion for summary judgment with respect to plaintiff's claim for retaliation.

**CONCLUSION**

Because I find that there is insufficient evidence in the record from which a reasonable jury could conclude that plaintiff suffered either age or gender based discrimination or retaliation, I will grant defendant's motion and enter judgment in his favor.